# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-14-927

| | |
|---|---|
| DIHA MIDDLEBROOK<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES<br>and MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered:** March 4, 2015<br><br>APPEAL FROM THE GARLAND COUNTY<br>CIRCUIT COURT<br>[NO. JV-14-262]<br><br>HONORABLE VICKI SHAW COOK,<br>JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant Diha Middlebrook appeals the July 23, 2014 order of the Garland County Circuit Court adjudicating her child, E.M. (born 12/03/09), dependent-neglected. Appellant argues that the circuit court lacked sufficient evidence to support a finding of dependency-neglect and, alternatively, that the circuit court improperly admitted appellant's psychological evaluation, rendering its ruling clearly erroneous. We find no error and affirm.

On March 21, 2014, Katherine Finnegan, an Arkansas State Police Investigator, was investigating claims made against appellant and her boyfriend, Brian Holcomb. Evidence indicated that appellant, Holcomb, and E.M. lived together in the same apartment. During Finnegan's investigation, E.M. stated that, while appellant was at the store, Holcomb had touched his uncovered penis to her uncovered vagina. Holcomb repeatedly refused to be interviewed throughout the course of the investigation.

Appellant agreed to be interviewed. Upon learning of the things E.M. had said, appellant told Finnegan that she could protect her child and denied that she, E.M., and Holcomb lived together. Finnegan reported E.M.'s allegations to the Department of Human Services (DHS) and the following Monday, appellant was interviewed by Judy Jenson, a DHS investigator. Jenson testified that she wished to work with appellant to create a protection plan for E.M. She testified, however, that appellant seemed uninterested and more concerned as to when she and Holcomb could resume living together and stated that appellant said she did not believe E.M.'s sex-abuse claims.

Later that day, E.M. was interviewed by Tracy Childress of the local children's advocacy center and Finnegan attended to observe. E.M.'s reactions to questions in this second interview starkly contrasted with the way she acted in her initial interview. Rather than calmly, consistently, and credibly answering questions about her claims against Holcomb, Childress stated that "after [E.M.] identified body parts[,] she completely shut down" and crawled under a chair. DHS assumed immediate emergency custody of E.M. on March 25, 2014.

A petition for emergency custody was filed by DHS on March 27, 2014, and a probable cause hearing was held on April 2, 2014. The circuit court found probable cause to proceed. At the subsequent adjudication hearing, testimony conflicted as to whether appellant had actually cut-off contact with the alleged offender and whether she took E.M.'s accusations seriously. In addition, appellant testified, as did other witnesses, that Holcomb no longer lived in Arkansas. Finally, a forensic psychological evaluation of appellant was admitted into evidence, which the court took into account in supporting the

adjudication. Appellant unsuccessfully contests the admissibility of that evaluation in this appeal.

After the hearing on July 23, the circuit court adjudicated E.M. dependent-neglected. Specifically, it found that E.M. suffered from neglect in that appellant failed to take reasonable action to protect her child because she did not believe E.M.'s statements regarding the sexual abuse perpetrated by Holcomb and, therefore, either she would not be able to protect E.M. from Holcomb or would not keep E.M. away from Holcomb. This appeal followed.

An adjudication order in a dependency-neglect proceeding is an appealable order.[1] The standard of review we employ in dependency-neglect actions is de novo, but we do not reverse the judge's findings unless they are clearly erroneous or clearly against the preponderance of the evidence.[2] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.[3] A determination of preponderance of the evidence turns on questions of credibility and the weight to be given testimony and, therefore, deference is given to the circuit court's superior position to weigh the relative merits of testimonial evidence.[4]

---

[1] Ark. Sup. Ct. R. 6-9(a)(1)(a).

[2] *Eason v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 507, 423 S.W.3d 138.

[3] *Atkinson v. Atkinson*, 72 Ark. App. 15, 32 S.W.3d 41 (2000).

[4] *Hoffman v. State*, 289 Ark. 184, 711 S.W.2d 151 (1986).

Under the Juvenile Code, a child is dependent-neglected when the preponderance of the evidence shows that a parent's neglect leaves her child at a substantial risk of serious harm.[5] The focus of an adjudication hearing is on the child, not the parent.[6] An adjudication of dependency-neglect occurs without reference to which parent committed the acts or omissions leading to the adjudication; the juvenile is simply dependent-neglected.[7] Our law defines "neglect" to include those acts or omissions of a parent that constitute failure to take reasonable action to protect the juvenile from abuse when the existence of this condition was known or should have been known.[8]

Our statutes specifically include failure to protect a child from sexual abuse as constituting neglect.[9] Sexual abuse includes sexual contact by either a caretaker or someone over the age of 18 to a person less than 15 years old.[10] This sexual contact includes the touching, directly or through the clothing, a girl's sexual organs.[11] Finally, and most pertinent to the instant case, neglect includes the failure to appropriately

---

[5] Ark. Code Ann. § 9–27–303(18)(A).

[6] *Seago v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 767, 360 S.W.3d 733.

[7] *Id.*

[8] Ark. Code Ann. § 9–27–303(36)(A)(3).

[9] Ark. Code Ann. § 9–27–303(36)(A)(iii).

[10] Ark. Code Ann. § 9–27–303(52)(B)(i).

[11] Ark. Code Ann. § 9–27–303(53)(A)(i).

supervise the juvenile, causing her to be left alone at an inappropriate age or in inappropriate circumstances that puts the juvenile at risk of harm. [12]

Here, appellant concedes that sexual abuse occurred, and that finding alone was sufficient to support the conclusion that E.M. was dependent-neglected.[13] In *Lipscomb*, our court stated that "a parent has a duty to protect a child and can be considered unfit even though she did not directly cause her child's injury; a parent must take affirmative steps to protect her children from harm."[14] Appellant asks us to rule in her favor because she has cut off contact with Holcomb and kept E.M. separated from Holcomb. Nevertheless, the circuit court was not convinced by appellant's claims, and it is not our purview to invalidate a circuit court judgment when such judgments turn on the credibility of witnesses. In other words, to find merit in appellant's argument would require our court to act as a super fact-finder or second guess the credibility determinations of the lower court, and that is something we cannot and will not do.[15] Accordingly, we cannot conclude that the circuit court clearly erred in finding that E.M. was dependent-neglected.

---

[12] Ark. Code Ann. § 9-27-303(36)(A)(vii).

[13] *Lipscomb v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 257 (holding that although appellant was not the person to sexually abuse the minor, the minor was still at a substantial risk of harm).

[14] *Id.* (citing *Sparkman v. Ark. Dep't of Human Servs.*, 96 Ark. App. 363, 242 S.W.3d 282 (2006)).

[15] *Blanchard v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 785, 379 S.W.3d 686.

Appellant argues in an additional point that the psychological evaluation was improperly admitted. Appellant, however, made no objection at trial when the evidence was admitted, and therefore this matter is not preserved for appeal.[16]

Affirmed.

GLADWIN, C.J., and KINARD, J., agree.

---

[16] Ark. R. Evid. 103(a)(1).