Cite as 2020 Ark. 344

# SUPREME COURT OF ARKANSAS

No. CR-20-291

| | | |
|---|---|---|
| | | **Opinion Delivered:** October 29, 2020 |
| ALFONZO HAMPTON | APPELLANT | APPEAL FROM THE BRADLEY COUNTY CIRCUIT COURT [NO. 06CR-17-6] |
| V. | | HONORABLE SAM POPE, JUDGE |
| STATE OF ARKANSAS | | AFFIRMED. |
| | APPELLEE | |

**JOHN DAN KEMP, Chief Justice**

Appellant Alfonzo Hampton appeals a judgment of the Bradley County Circuit Court convicting him of first-degree murder and possession of a firearm by certain persons and sentencing him to life imprisonment and ten years' imprisonment, respectively. For reversal, he argues that the circuit court erred in finding that he was fit to proceed to trial. We affirm.

## I. *Facts*

On February 21, 2017, Hampton entered the Warren Police Department and told officers that he had killed his father, Fred Hampton, and that the body was in the trunk of his car. Hampton also pulled out a gun and handed it to one of the officers. Officers recovered Fred Hampton's body from the trunk of Hampton's car. A forensic pathologist determined that Fred Hampton's cause of death was two gunshot wounds to the head.

The State charged Hampton with first-degree murder and possession of a firearm by certain persons. On August 28, 2017, Hampton moved for a competency determination. The

circuit court ordered that he be evaluated to determine his fitness to proceed. In February 2018, the circuit court received a report from Dr. Lacey Willett Matthews at the Arkansas State Hospital in which she opined that Hampton was unfit to proceed to trial. At a March 5, 2018 hearing, the circuit court found Hampton not fit to proceed and committed him to the custody of the Arkansas State Hospital until he was restored to fitness. Hampton then underwent restoration proceedings through an outpatient restoration program.

On September 14, 2018, an evaluation report by Dr. Julie Wood, a forensic psychologist, was filed with the circuit court. Dr. Wood opined that Hampton "did not lack the capacity to understand the proceedings against him and did not lack the capacity to assist effectively in his own defense." Hampton's trial counsel asked the circuit court to delay ruling on Hampton's fitness until he could obtain an independent evaluation. Hampton was evaluated by Dr. Raymond K. Molden, a forensic psychiatrist, on November 12, 2018. In a report submitted on April 7, 2019, Dr. Molden opined that Hampton understood the proceedings against him but lacked the capacity to effectively assist his attorney.

On August 12, 2019, the circuit court again held a hearing on Hampton's fitness to proceed. Hampton introduced Dr. Matthews's forensic report. Additionally, Dr. Wood testified about Hampton's examination at the Southwest Arkansas Counseling and Mental Health Center. Dr. Wood testified that Hampton is schizophrenic and has a long history of schizophrenia. She acknowledged that Hampton had previously been found unfit to proceed to trial. Although Dr. Wood was not provided with information on the medications he was

taking at the time of his evaluation, Hampton informed her that he was taking routine medications in the morning and evening and that they were helping him.

Dr. Wood testified that she administered the Georgia Core Competency Test (GCCT)—a fitness-to-proceed examination—to Hampton, and that he passed.[1] She discussed his restoration proceedings and acknowledged that the counselor who conducted those proceedings felt that Hampton was unfit and would not become fit to proceed. Dr. Wood testified that the counselor was not authorized or trained to make that call.

Dr. Wood explained what the GCCT involved and the questions she asked during the GCCT. She testified that she evaluated whether Hampton had the rational capacity to make decisions about his future and whether he understood the facts related to the courtroom and to the crime. She testified that on the day of her evaluation, Hampton behaved appropriately and communicated sufficiently. Dr. Wood stated that with patience, he could testify on his own behalf.

On communication, Dr. Wood reported that she could understand Hampton 95 percent of the time. She also opined that his thought process was logical. He did not display hallucinations, delusions, obsessions, compulsions, or phobias. He denied depression and anxiety. Dr. Wood's conclusion about Hampton's thought process was based on her hour-

---

[1]Hampton scored a 92 out of 100 on the exam administered by Dr. Wood. Any score above 70 is considered a passing score. Dr. Wood testified that the GCCT is the most commonly used fitness-to-proceed test in the state of Arkansas.

and-forty-five-minute interview with Hampton, during which he gave an entire history on himself and answered her questions.

Dr. Wood opined that Hampton understood his plea options and the benefits and consequences of a plea bargain. She based that opinion on his responses to questions on whether he knew the meaning of guilty and not guilty, whether he knew that he could plead not guilty despite his behavior, and whether he understood and could identify the benefits and consequences of a plea bargain. Hampton told Dr. Wood that he would tell his lawyer the truth of everything that happened on the date of the crime and was willing to work with his attorney. Dr. Wood did not discuss specific defenses with Hampton because "[t]hat's a higher level understanding that we don't expect our average inmate to understand." Dr. Wood testified that Hampton was capable, on the date of the evaluation, of making reasonable choices about his defense. She opined that with proper medication, Hampton was fit to proceed to trial.

Dr. Molden then testified about his November 2018 evaluation of Hampton. In assessing Hampton's fitness to proceed, Dr. Molden evaluated whether Hampton understood the legal proceedings against him, both rationally and factually, and whether he had the ability to effectively assist his attorney. Dr. Molden also administered the GCCT and reported that Hampton passed with a score of 88 out of 100. Dr. Molden stated that Hampton understood the proceedings against him.

Dr. Molden concluded, however, that Hampton was not fit to proceed because he could not assist in his own defense. Specifically, Dr. Molden discussed Hampton's long

history of schizophrenia and his opinion that little progress was made during restoration proceedings. Dr. Molden believed that Hampton lacked the ability to effectively engage or to disclose to his attorney pertinent facts, events, or his state of mind at the time of the crime. Dr. Molden also testified about Hampton's lack of depth or detail when answering questions and believed that Hampton was unable to engage in a reasoned choice of legal strategies. Dr. Molden opined that Hampton's answers to non-case-related vignettes showed some impairment in his reasoning ability to consider information that might be relevant to present to his defense attorney. He opined that although Hampton could verbalize a choice, that choice did not seem to have a rational understanding behind it. Dr. Molden testified that during his two-hour interview with Hampton, he appeared apathetic, paranoid, guarded, and not forthcoming. Dr. Molden believed Hampton's fitness could be restored in another setting with a change in medication.

Following Dr. Molden's testimony, the State recalled Dr. Wood. She explained that apathy occurs outside of schizophrenia or any mental illness. She opined that probably 90 percent of inmates develop a sense of apathy toward the legal system because of their past experiences. She reiterated her belief that Hampton could effectively assist his attorney. In an August 26, 2019 order, the circuit court found that Hampton was fit to proceed and ordered him to trial.

A Bradley County Circuit Court jury found Hampton guilty of first-degree murder and possession of a firearm by certain persons. He was sentenced to life imprisonment for

5

the murder conviction and ten years' imprisonment for possession of a firearm by certain persons, to be served consecutively. Hampton now brings this appeal.

## II. *Fitness to Proceed*

For his sole point on appeal, Hampton argues that the circuit court erred in determining that he was fit to proceed to trial because his schizophrenia prevented him from effectively assisting in his own defense.

The conviction of an accused person while he or she is legally incompetent violates due process. *Cage v. State*, 2017 Ark. 277, at 5, 528 S.W.3d 825, 828. This court has long held that criminal defendants are presumed competent to stand trial and that they have the burden of proving otherwise. *Thessing v. State*, 365 Ark. 384, 390, 230 S.W.3d 526, 532 (2006). This court has stated that the test for competency to stand trial is whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational, as well as a factual, understanding of the proceedings against him. *Id.*, 230 S.W.3d at 532.

The test for competency on appeal is whether substantial evidence supports the circuit court's finding. *Cage*, 2017 Ark. 277, at 6, 528 S.W.3d at 828. There is substantial evidence if the evidence is forceful enough to compel reasonable minds to reach a conclusion one way or the other and requires more than mere speculation or conjecture. *Thessing*, 365 Ark. at 390, 230 S.W.3d at 532. When determining whether there is substantial evidence, it is permissible to consider only the testimony that supports a finding of competency. *Id.*, 230 S.W.3d at 532.

We have stated that, following a circuit court's ruling on competency to stand trial, we will not attempt to weigh the evidence or pass on the credibility of witnesses when the medical reports conflict with each other. *Jones v. State*, 317 Ark. 131, 136, 876 S.W.2d 262, 265 (1994). With dueling medical experts, we have explained that the trier of fact observes the witnesses firsthand, sees their demeanor and responsiveness in answering questions, and is in the best position to determine which is the more credible witness. *Mauppin v. State*, 314 Ark. 566, 569, 865 S.W.2d 270, 272 (1993).

Hampton argues that Dr. Molden's opinion should have been given more weight than Dr. Wood's because his testimony was more thorough on Hampton's ability to convey information to his attorney and to rationally decide whether to plead guilty or go to trial. We will not reweigh the credibility of these conflicting medical experts. *Id.*, 865 S.W.2d at 272. Here, Dr. Wood provided detailed testimony on how she reached her conclusion that Hampton could effectively assist his attorney, which included Hampton's interview, his performance on the GCCT, and her review of his extensive medical history. Dr. Wood's report and testimony provided substantial evidence to support the circuit court's ruling. *See Cage*, 2017 Ark. 277, at 6–7, 528 S.W.3d at 828. Thus, we hold that the circuit court did not err in determining that Hampton was fit to stand trial, and we affirm Hampton's convictions and sentences.

III. *Rule 4-3(i)*

Because Hampton received a sentence of life imprisonment, this court, in compliance with Arkansas Supreme Court Rule 4-3(i), has examined the record for all objections,

7

motions, and requests made by either party that were decided adversely to Hampton. No prejudicial error has been found.

Affirmed.

*Short Law Firm*, by: *Lee D. Short*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.